ATTEST:
A TRUE COPY CERTIFIED
Scott L. Poff, Clerk
United States District Court

*By crobinson at 10:29 am, Mar 05, 2020*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

KIMBERLY JAMES,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: 5:18-cv-99

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Craig Petersen ("the ALJ" or "ALJ Petersen") denying her claim for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Plaintiff urges the Court to reverse and remand the ALJ's decision for rehearing. Doc. 18 at 27. Defendant asserts the Commissioner's decision should be affirmed. Doc. 19 at 17. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

### BACKGROUND

Plaintiff filed an application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income on January 7, 2015, alleging she became disabled beginning February 25, 2014 due to a back injury, post-traumatic stress disorder ("PTSD"), low IQ, depression, extensive nerve damage, and poor vision made worse by nerve medications. Doc. 12-8 at 6 (R. 357). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On October 14, 2016, ALJ Petersen conducted a video hearing at

which Plaintiff, who was represented by counsel, appeared and testified from Waycross, Georgia. Doc. 12-3 at 4 (R. 104). Plaintiff appeared and testified again at a supplemental hearing held on August 8, 2017 and at a second supplemental hearing on April 10, 2018. Doc. 12-2 at 65, 85 (R. 64, 84). Kenneth Bennett, a vocational expert, also appeared at the hearings. Id.; Doc. 12-3 at 5 (R. 105). ALJ Petersen found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") since November 2, 2014. Doc. 12-2 at 31 (R. 30). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. Id. at 2 (R. 1).

Plaintiff, born on January 23, 1978, was 40 years old when ALJ Petersen issued his final decision and 36 years old on her alleged disability onset date. Id. at 30 (R. 29). She has at least a high school education. Id. Plaintiff has no transferable job skills, as her past relevant work is unskilled. Id.

## DISCUSSION

**I.     The ALJ's Findings**

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and is acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her

3

age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since February 25, 2014, her alleged onset date. Doc. 12-2 at 16 (R. 15). At step two, ALJ Petersen determined Plaintiff had the following severe impairments: lumbar spine degenerative disc disease; mild scoliosis of the cervical spine; osteoarthritis of bilateral hands; impingement syndrome, bursitis, and rotator cuff tendinopathy; fibromyalgia; inflammatory polyarthropathy; borderline intellectual functioning; adjustment disorder with depressed mood; generalized anxiety disorder; somatic symptoms disorder; persistent depressive disorder; and obesity. Id. At the third step, the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Id. The ALJ found Plaintiff had the residual functional capacity to perform sedentary work, with the following exceptions: push/pull up to ten pounds occasionally; stand/walk up to four of eight hours and sit up to six of eight hours with normal breaks; occasionally climb ramps and stairs, but never climb ladders or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; occasionally do overhead work and use foot controls; frequently do handling, fingering, and feeling; avoid concentrated exposure to heat, humidity, cold, gases, and fumes along with unprotected heights and other hazards; and limited to simple, routine work involving simple, work-related decisions with few, if any, workplace changes and occasional interaction with coworkers, supervisors, and the public. Id. at 19 (R. 18). At the next step, the ALJ determined Plaintiff could not perform any of her past relevant work. Id. at 30 (R. 29). The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of polisher, tube operator, and

cutter, all of which are unskilled jobs at the sedentary exertional level and which exist in significant numbers in the national economy. Id. at 31 (R. 30).

## II.  Issues Presented

Plaintiff asserts the ALJ erred by discounting the opinion of her treating physician, Dr. Cobarrubias, without good cause. Doc. 18 at 2. Additionally, Plaintiff contends the ALJ discounted, without good cause, the opinions of Dr. Engen, her treating psychologist, and Dr. Roth, a consultative psychological examiner. Id.

## III.  Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

### IV.  Whether the ALJ Properly Considered the Medical Source Statement of Dr. Cobarrubias, Plaintiff's Treating Physician

Plaintiff asserts ALJ Petersen discounted the medical source statement provided by Plaintiff's long-time treating physician, Dr. Samuel Cobarrubias, without good cause, then ruled against Plaintiff without identifying a medical opinion upon which to base his decision. Doc. 18 at 2. Specifically, Plaintiff takes issue with the portion of the ALJ's residual functional capacity determination finding some durational limitation in Plaintiff's ability to stand, walk, and sit during an eight-hour workday, despite Dr. Cobarrubias' opinion that Plaintiff would sometimes need to lie down at unpredictable intervals during a work shift. Doc. 20 at 2; Doc. 12-12 at 44 (R. 748).

In response, Defendant acknowledges the ALJ's residual functional capacity assessment and Dr. Cobarrubias' opinion are not entirely consistent, noting the ALJ and physician come to slightly different conclusions regarding Plaintiff's ability to lift and carry objects, stand, walk,

and sit, climb and balance, reach and manipulate her hands, and that Dr. Cobarrubias has no opinion on exposure to environmental factors. Doc. 19 at 9–11. However, Defendant argues that, in the contested functional abilities of standing, walking, and sitting, the ALJ actually adopts more restrictive, thus, more favorable limitations than Dr. Cobarrubias. Id. In defense of the inconsistencies that do exist, Defendant argues an ALJ need not assign weight to each individual portion of a doctor's opinion, and the ALJ committed no error as to assigning weight to some portions of Dr. Cobarrubias' opinions and not others. Id. at 12. Moreover, Defendant argues the ALJ accounted for Plaintiff's need to lie down in Plaintiff's limitations, deciding she could likely do so during normal breaks during the day, and, in fact, that portion of the ALJ's limitations in not inconsistent with Dr. Cobarrubias' conclusion. Id. at 11. Finally, Defendant asserts substantial evidence supports the ALJ's decision and, thus, any error committed by not addressing Dr. Cobarrubias' opinion that Plaintiff may sometimes need to lie down is harmless. Id.

Plaintiff filed a Reply, acknowledging the law does not require the ALJ to discuss every detail in the evidentiary record, but arguing the ALJ cannot pick and choose favorable positions and discount portions of the treating physician's opinion without an explanation. Doc. 20 at 4.

For the reasons which follow, Plaintiff's first enumeration of error is without merit. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting

20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2)).[1] Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." Winschel, 631 F.3d at 1179 (quoting Lewis, 125 F.3d at 1440). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Id. (quoting Phillips, 357 F.3d at 1241). When the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight and those reasons are supported by substantial evidence, the Court will not reverse the Commissioner's decision. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). Per Social Security Regulations, the ALJ gives "controlling weight" to a treating physician's opinion if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If the ALJ does not assign controlling weight to the medical opinion, the ALJ must consider: (1) the examining relationship; (2) the treatment relationship; (3) the degree to which an opinion is supported by evidence; (4) consistency with the record as a whole; (5) the physician's specialization related to the medical issues; and (6) any other factors that tend to support or contradict the medical opinion. Brock v. Comm'r, Soc. Sec. Admin., 758 F. App'x 745, 750 (11th Cir. 2018) (citing to 20 C.F.R. § 416.927(c)). "Nothing in the regulations requires the ALJ to explicitly discuss each of the factors in his or her decision." Id. The ALJ need only "state with particularity the weight given to different medical opinions and the reasons

---

[1] The Court notes that 20 C.F.R. § 404.1527 has been amended but was still in effect on the date the ALJ issued his decision in this case and continues to be in effect on appeal, as the revised Regulation applies only to applications for benefits filed on or after March 27, 2017. 20 C.F.R. § 404.1520c.

therefor;" if the ALJ does not do so, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (citing to Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). A court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." Hunter v. Soc. Sec. Admin., 808 F.3d 818, 823 (11th Cir. 2015). Even so, "[a]n ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007).

As a treating physician, Dr. Cobarrubias' opinion was entitled to great weight unless good cause was shown to the contrary. It is clear the ALJ accorded Dr. Cobarrubias' opinion significant weight, calling his own residual functional capacity assessment "almost the same, except for occasional manipulation limitations." Doc. 12-2 at 28 (R. 27). Indeed, Plaintiff concedes the ALJ "essentially gave Dr. Cobarrubias' opinion significant weight." Doc. 20 at 2. In fact, Plaintiff does not contest the ALJ's assessment of Plaintiff's manipulative limitations, i.e., her ability to reach in different directions and use her hands to handle, finger, and feel objects. Rather, she contests the omission of any discussion about her "need to lie down at unpredictable intervals throughout the 8 hour work day due to her neck pain." Id.

In his Medical Source Statement, Dr. Cobarrubias opined, as relevant here, that Plaintiff would sometimes need to lie down at unpredictable intervals during a work shift. Doc. 12-12 at 44 (R. 748) (checking "yes" to inquiry "Will the individual sometimes need to lie down at unpredictable intervals during a work shift?"). Dr. Cobarrubias, however, declined to say how often he thought this would happen. Id. In support of his opinion, he wrote, "[s]he has chronic back pain from a ruptured cervical disc; lying down will help ease her pain." Id. However, in

the same statement, Dr. Cobarrubias also opined Plaintiff would not need to elevate her legs throughout the day; standing, walking, and sitting were not affected by her impairments; she could stand, walk, or sit for eight hours uninterrupted; and she had no need for a walking aid or periodic alternation of sitting and standing to relieve pain. Id. at 44–45 (R. 748–49).

Plaintiff argues the ALJ improperly discounted Dr. Cobarrubias' Medical Source Statement and assessed an inconsistent residual functional capacity. Doc. 20 at 2. Plaintiff's argument lacks merit. First, the ALJ's residual functional capacity is inconsistent with Dr. Cobarrubias' statement, and, if it is, the inconsistency is in Plaintiff's favor. Dr. Cobarrubias plainly opines that Plaintiff's ability to stand, walk, and sit, unaided, for an entire eight-hour workday is not affected by her impairments. Doc. 12-12 at 44–45 (R. 748–49). In the areas of standing, walking, and sitting, ALJ Petersen assessed a residual functional capacity with measured limitations, which was ultimately more favorable to Plaintiff than Dr. Cobarrubias' opinion. Regarding Plaintiff's ability to stand and walk, the ALJ limited Plaintiff to four hours in an eight-hour workday, and regarding Plaintiff's ability to sit, the ALJ limited Plaintiff to six hours in an eight-hour workday. Regarding Dr. Cobarrubias' opinion that Plaintiff would sometimes need to lie down at unpredictable intervals during a work shift, the ALJ recognized Plaintiff's need for breaks in his residual functional capacity assessment, writing Plaintiff should "only stand/walk up to four of eight hours and up to six of eight hours *with normal breaks*." Id. at 44 (R. 748) (emphasis added). Normal breaks constituting times during which Plaintiff could lie down to ease her pain are acknowledged in the ALJ's residual functional capacity. Moreover, Dr. Cobarrubias' opinion that Plaintiff needs to lie down sometimes—without any detail about how often this would be expected to occur or the duration of such instances—is too vague to be inconsistent with the ALJ's allowance for normal breaks. Indeed, there is no indication the ALJ

ignored this portion of Dr. Cobarrubias' opinion; rather, at most, the ALJ simply did not give this vague portion of the opinion the exceptional weight Plaintiff desires.  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," so long as the decision "is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'"  Dyer, 395 F.3d at 1211 (citing Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)).  ALJ Petersen did not broadly reject Dr. Cobarrubias' opinion merely by omitting the ambiguous line that Plaintiff will sometimes need to lie down at unpredictable intervals; thus, the ALJ committed no error.

Nonetheless, even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of Dr. Cobarrubias' opinion, such error was harmless because it is clear the ALJ's decision concerning this aspect of Dr. Cobarrubias' opinion—that Plaintiff "will sometimes need to lie down at unpredictable intervals"—was based on substantial evidence.  See Newberry v. Comm'r, Soc. Sec. Admin., No. 5:12-cv-251, 2013 WL 476195, at *5 (M.D. Ga. Aug. 16, 2013) (finding ALJ did not err in omitting treating physician's opinion plaintiff "must have the ability to [lie] down at intervals for relief of her lower back pain" because opinion was unsupported by relevant evidence and ALJ is not required to discuss every piece of evidence), *report and recommendation adopted*, 2013 WL 4813671 (M.D. Ga. Sept. 6, 2013), *aff'd*, 572 F. App'x 671, 672 (11th Cir. 2014) (finding omission of opinion was harmless error).  Plaintiff argues the ALJ picked and chose evidence to support a finding of non-disability, but the Court finds the ALJ conducted a thorough review of Plaintiff's medical history which provides substantial support for his decision.  Doc. 12-2 at 21–25 (R. 20–24).

In reviewing the medical record, the ALJ noted Plaintiff's 2014 physical exams with Premier Pain Management Specialists showed tenderness and limited range of motion of the

cervical spine but normal muscle tone and bulk and normal grip strength and recommended conservative treatment, including pain medication and anti-inflammatories. Doc. 12-10 at 32–33 (R. 553–54). Plaintiff's 2015 physical exam with Optim Healthcare noted slightly limited 4/5 range of motion of the upper extremities and lower left extremity, but MRIs of the cervical spine and lumbar spine were both normal. Id. at 76 (R. 597). Additionally, in a 2015 consultative examination, Dr. Packer reported movement and functional use of Plaintiff's impaired upper extremities to be "normal," although he offered no formal opinion as to Plaintiff's limitations or disability. Id. at 53–54 (R. 574–75). A 2016 physical exam at Neurology Associates showed Plaintiff was in mild distress only; although Plaintiff had "trigger points," or sensitive spots of pain, she also had normal muscle strength in her upper and lower extremities, normal reflexes, normal coordination and gait, and no overall weakness despite her chronic pain. Doc. 12-12 at 4 (R. 708). The ALJ also acknowledged Dr. Stephen Pappas' 2017 Medical Source Statements as largely consistent with that of Dr. Cobarrubias' because Dr. Pappas opined Plaintiff could sit, stand, and/or walk for eight out of eight hours without interruption; the movement of her upper and lower extremities was noted as "Ok"; and Plaintiff had no need for an assistive walking device. Id. at 108–11 (R. 812–15); Doc. 12-14 at 41 (R. 973). Additionally, the ALJ relied on a 2018 examination with Dr. Anil Menedal, which noted Plaintiff's worsening pain and revealed muscle spasm, tenderness, restricted and painful range of motion but found no weakness, normal reflexes, and pain relief after an epidural injection. Doc. 12-18 at 31 (R. 1182). The evidentiary record supports ALJ Petersen's conclusion that, although Plaintiff "has a documented history of chronic pain," her "allegations of disabling pain [have] not been established by any diagnostic clinical exams and findings." Doc. 12-2 at 25 (R. 24). The Court finds the ALJ's residual functional capacity assessment is based on substantial evidence. Accordingly, if the ALJ's

treatment of Dr. Cobarrubias' opinion that Plaintiff "will sometimes need to lie down at unpredictable intervals" was error, the error was harmless. See Newberry, 572 F. App'x at 672.

V.  **Whether the ALJ Properly Considered the Medical Source Statements of Dr. Kristiansson Roth, the Consultative Examiner, and Dr. Brenden Engen, Plaintiff's Psychologist**

Plaintiff also asserts as error the ALJ's decision assigning partial weight to the opinions of Dr. Engen, Plaintiff's treating psychologist, and Dr. Roth, the consultative examiner, without good cause. Doc. 18 at 26. Plaintiff argues the ALJ rejected the opinions of Dr. Engen and Dr. Roth because Plaintiff's initial 2015 application for benefits did not assert depression as a disability, which Plaintiff argues has developed over the intervening years into a disability.[2] Id.

Defendant argues substantial evidence supports the ALJ's decision to assign partial weight to both doctor's opinions; Dr. Engen's opinion is given partial weight, as it is inconsistent with Dr. Roth's opinion and other evidence in the record, including Plaintiff's daily activities and subjective statements; and Dr. Roth's opinion is given partial weight, as it was made before Plaintiff sought formal mental health treatment. Doc. 19 at 15–16. Plaintiff filed a reply brief, arguing the doctors' opinions are consistent and mandate a finding of disability. Doc. 20 at 6.

As previously noted, an ALJ needs good cause to discount the medical opinion of a treating physician. Winschel, 631 F.3d at 1179 (quoting Lewis, 125 F.3d at 1440). An ALJ has good cause "when the: (1) treating physician's opinion was not bolstered by the evidence;

---

[2]  Plaintiff argument that the ALJ rejected these opinions because Plaintiff's initial application for benefits did not assert depression as a disability is not supported in any way by the record. While the ALJ recognized Plaintiff did not assert depression as a disability at the outset, he merely observed this fact and then recognized Plaintiff had been seeking mental health treatment in the time since filing her initial application and recognized she had documented mental health issues. Doc. 12-2 at 17, 27 (R. 16, 26). When the ALJ discussed the weight assigned to the opinions of Drs. Roth and Engen, he made no mention of the fact that Plaintiff had not initially asserted depression as a disability. Id. at 29 (R. 28). Plaintiff has not pointed to any indication in the record that suggests the ALJ discounted these opinions based on the content of Plaintiff's initial application. Accordingly, the argument is without merit, and the Court does not address it further.

13

(2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241. Dr. Engen was Plaintiff's treating physician, but Dr. Roth was a consultative examiner. An ALJ need not accord as much deference to an examining physician's medical opinion. 20 C.F.R. § 404.1527(c)(2); Beegle v. Comm'r of Soc. Sec., 482 F. App'x 483, 488 (11th Cir. 2012). The ALJ need only consider the factors laid out in 20 C.F.R. § 404.1527(c), but he need not discuss each factor explicitly. Brock, 758 F. App'x at 750.

### A. Dr. Roth's Medical Opinion

Dr. Roth performed a psychological evaluation of Plaintiff on March 11, 2017. Doc. 12-13 at 2 (R. 825). Regarding her mental health history, Dr. Roth noted Plaintiff "has not been hospitalized for an emotional problem and denied mental health treatment." Id. at 4 (R. 827). Dr. Roth's impression was that Plaintiff had no limitations in remembering and understanding simple and detailed unskilled work; moderate difficulty reading; diminished ability to sustain attention, persistence, and pace due to pain; fair ability to interact appropriately with others; and some difficulty adapting to normal workplace stressors depending on her pain level. Id. at 6–7 (R. 829–30). The ALJ acknowledged these findings but afforded Dr. Roth's opinion partial weight because his findings came before Plaintiff "sought formal mental health treatment." Doc. 12-2 at 29 (R. 28). Other courts have found substantial evidence supported an ALJ's decision to give little weight to a medical opinion issued before the claimant sought mental health treatment. See Huddle v. Barnhart, 143 F. App'x 721, 722 (8th Cir. 2005) (finding ALJ properly gave little weight to treating physician's opinion rendered before plaintiff sought mental health treatment); Joseph J. v. Comm'r of Soc. Sec., No. C19-5593, 2020 WL 529613, at *5 (W.D. Wash. Feb. 3, 2020) (finding ALJ entitled to discount medical opinion based on plaintiff's lack of treatment at

14

time of examination); White v. Comm'r of Soc. Sec., No. 6:13-cv-1190, 2014 WL 4060020, at *1 (M.D. Fla. Aug. 15, 2014) (same). The Court finds, like the courts in these cited cases, that ALJ Petersen stated "with particularity the weight given to [Dr. Roth's] medical opinions and the reasons therefore[;]" thus, the ALJ's conclusions are supported by substantial evidence. Winschel, 631 F.3d at 1179.

### B. Dr. Engen's Medical Opinion

Of the opinions in Dr. Engen's Medical Source Statement, taken April 5, 2018, ALJ Petersen acknowledged the doctor's findings that Plaintiff would be unable to function independently, appropriately, and effectively on a sustained basis in understanding and applying information; interacting with others; concentrating and persisting throughout an eight-hour workday; and adapting to work changes throughout an eight-hour workday. Doc. 12-2 at 29 (R. 28); Doc. 12-18 at 48–50 (R. 1199–1201). Furthermore, the ALJ noted the opinion that Plaintiff would be seriously limited in her ability to function and maintain pace and manage herself in an eight-hour workday. Doc. 12-2 at 29 (R. 28); Doc. 12-18 at 48–50 (R. 1199–1201). Finally, the ALJ noted that Dr. Engen opined Plaintiff would need to miss work four or more times per month. Doc. 12-2 at 29 (R. 28); Doc. 12-18 at 51 (R. 1202).

In assigning Dr. Engen's opinion partial weight, ALJ Petersen cited to Plaintiff's "extensive daily living activities," Plaintiff's "admission of no psychiatric issues," and Dr. Engen's own "statement of moderately impaired mental functioning only." Doc. 12-2 at 29 (R. 28). Regarding Plaintiff's activities of daily living, the ALJ paid specific attention to the fact Plaintiff cares for her special needs daughter and must be available if the school contacts her, has a valid driver's license and drives, does some household chores, uses the phone and computer, can manage her medication and appointments, makes simple, microwave meals, performs light

household cleaning, watches television during the day, performs basic hygiene and self-care, interacts with her family, and denies having problems interacting with others appropriately. Id. at 17 (R. 16); Doc. 12-13 at 4–5 (R. 827–28). The ALJ also noted Plaintiff's denial of any psychiatric problems in a March 2018 appointment with Dr. Cobarrubias, during which Dr. Cobarrubias noted Plaintiff denied feeling irritable, angry, agitated, restless, anxious, nervous, tense, and having sleep problems and depressing, sad, worried, or apathetic feelings. Doc. 12-16 at 7 (R. 1093). The ALJ noted Dr. Engen's Global Assessment of Functioning ("GAF") score, which rates the seriousness of one's mental illness, was 56 out of 100 for Plaintiff. Doc. 12-13 at 74 (R. 897). Finally, in his Progress Notes, Dr. Engen checked off that Plaintiff was "moderately impaired" in her "current functioning," rather than "severely impaired." Doc. 12-18 at 46 (R. 1197). Not only is Dr. Engen's opinion inconsistent with his own records, substantial evidence supports a finding contrary to his Medical Source Statement. Here, as above, the ALJ stated "with particularity" the reasons for assigning partial weight to Dr. Engen's opinion. Winschel, 631 F.3d at 1179. Therefore, substantial evidence supports the ALJ's decision to give only partial weight to Dr. Engen's Medical Source Statement. The ALJ committed no error.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later

challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 5th day of March, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA